ALTENBERND, Judge.
Jean-Sébastien Sauriol appeals an order holding him in contempt for sending an email to his wife in violation of a domestic violence injunction. We reverse.
Our record in this appeal is limited to the proceedings on the petition for protection against domestic violence. Apparently, there is or has been a related dissolution proceeding and a criminal proceeding. The proceeding at issue in this case commenced in August 2008 when Jennifer Sau-riol filed a petition for injunction for protection against domestic violence, alleging that her husband had violently attacked her by hitting her across the face. She alleged that he had also engaged in earlier acts of physical violence.
The trial court entered a final judgment of injunction in early September 2008. The judgment prohibited violence and also contained a “no contact” provision, which stated that Mr. Sauriol should have no contact with his wife, including contact by email. This provision, however, was apparently limited so that Mr. Sauriol could discuss business matters with Ms. Sauriol. We say “apparently” because the injunction states that the express “terms and conditions cited by counsel of record” would be “drawn by counsel and appended hereto.” Unfortunately, nothing is appended to the judgment in the record.
In April 2009, Ms. Sauriol filed a standard form “affidavit and motion for order to show cause.” This pro se motion complained that Mr. Sauriol had sent his wife five emails between September 19, 2008, and February 11, 2009. The emails are attached to the motion. They are all short messages that are not threatening or even impolite. They address some business issues and Mr. Sauriol’s need to obtain some of his personal property. Mr. Sauriol is a Canadian citizen, and apparently he sent some of these emails from Canada.
Ms. Sauriol’s standard form motion requests that the trial court hold Mr. Sauriol in indirect criminal contempt; it does not request any relief under civil contempt. The trial court issued an order to show cause why Mr. Sauriol should not be held in civil contempt. Thereafter the procedures for indirect criminal contempt in Florida Rule of Criminal Procedure 3.840 were not further invoked.
After some delay, the trial court conducted a hearing on the contempt matter in August 2009. Mr. Sauriol appeared by telephone from Canada. There is no transcript of this hearing, but the record does contain detailed notes that are described as “court minutes,” which appear to have been prepared by a court clerk. The notes indicate that a judgment of dissolution had been entered and that Ms. Sauriol is now known as Ms. Stringer. It is difficult to know the extent of the testimony from these notes, but it is clear that Mr. Sauriol challenged the trial court’s patience. At the end of the hearing, the trial court informed Mr. Sauriol that he could not appear by telephone at any future hearings.
The trial court ruled that four of the emails did not violate the injunction because they concerned business matters be *206 tween the Sauriols. However, the court determined that the email sent by Mr. Sauriol in September 2008 violated the injunction because it discussed other issues beyond the former couple’s business matters. Without a transcript, we cannot evaluate this determination on appeal.
Despite the fact that this brief email does not appear to be threatening or impolite in any way, the court minutes reflect that the trial court initially held Mr. Sau-riol in indirect criminal contempt and sentenced him to three weeks in jail in the event that he ever returned to Florida. The court minutes reflect that the trial court rescinded this order ten minutes later and instead held Mr. Sauriol in civil contempt.
The rendered order on the motion for contempt confirms that the trial court held Mr. Sauriol in civil contempt for the single offending email that he sent eleven months earlier. The order states:
5. The court rules respondent is hereby sentenced to twenty one (21) days in the Charlotte County jail with a purge.
6. Respondent may purge the sentence if he: 1. Pays a five hundred dollar ($500) fine, and 2. Attends and completes a certified batterer’s intervention program. Respondent may attend a program in the jurisdiction of his choosing, but said program must be comparable to the batterer’s intervention program administered in the state of Florida under Chapter 65H-2, Florida Administrative Code, Section 741.32, Florida Statutes, Section 741.325, Florida Statutes, Section 741.327, Florida Statutes. Respondent shall provide proof of attendance to the Charlotte County Clerk’s office and to the law office of Attorney Jeffrey A. Rapkin, Esq....
7. Respondent has one year from the date of signature of this order to pay the $500 fine and attend the aforementioned batterer’s program. Should he fail to pay the $500 fine and successfully attend and complete the batterer’s program, respondent’s twenty one (21) day sentence shall be served.
For purposes of this appeal, we assume that Mr. Sauriol has the ability to pay $500 and that Canada has a certified batterer’s program that is comparable to Florida’s. In our limited record, however, nothing suggests that the trial court took evidence or otherwise considered these issues. We reverse this order because it is not a proper order of civil contempt; rather, it is little more than a repackaged effort at the unauthorized indirect criminal contempt order that had been entered a few minutes earlier.
The law of contempt is generally divided into two categories: criminal or civil contempt. See Parisi v. Broward Cnty., 769 So.2d 359, 363 (Fla.2000). Civil contempt sanctions are further categorized as either compensatory or coercive. Id.; see also H.K. Dev., LLC v. Greer, 32 So.3d 178, 184 (Fla. 1st DCA 2010).
As explained above, this case does not involve criminal contempt; it was not prosecuted under rule 3.840. The distinction between civil and criminal contempt is not as clear-cut as might be desired, but the court in Pansi explained:
The distinction between criminal and civil contempt often turns on the “character and purpose” of the sanctions involved. [Int’l Union, United Mine Workers v. Bagwell, 512 U.S. 821, 827, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) (quoting Gompers v. Buck’s Stove & Range Co., 221 U.S. 418, 441, 31 S.Ct. 492, 55 L.Ed. 797 (1911)).] We have previously explained that “[t]he purpose of criminal contempt ... is to punish. Criminal contempt proceedings are uti *207 lized to vindicate the authority of the court or to punish for an intentional violation of an order of the court.” Bowen v. Bowen, 471 So.2d 1274, 1277 (Fla.1985). On the other hand, a contempt sanction is considered civil if it “is-remedial, and for the benefit of the complainant.” Bagwell, 512 U.S. at 827-28, 114 S.Ct. 2552 ... (quoting Gompers, 221 U.S. at 441, 31 S.Ct. 492).
Parisi, 769 So.2d at 364 (emphasis in original).
In this case, it is obvious that the trial court was trying to punish Mr. Sauriol. If this case involved civil contempt, the sanction would be designed to coerce Mr. Sau-riol to obey the order, that is, to stop sending emails with nonbusiness content similar to the one that he sent in violation of the injunction during the first year that the injunction was in effect. But Mr. Sau-riol has not engaged in ongoing behavior that warrants a civil jail sanction subject to purge.
Courts may use fines in civil contempt either to compensate the losses of the injured party or to coerce compliance. Johnson v. Bednar, 573 So.2d 822, 824 (Fla.1991) (receded from, in part, on other grounds as recognized in Parisi, 769 So.2d at 365 n. 6). The $500 fine in this case is not designed to compensate Mr. Sauriol’s former wife for any loss. Moreover, it is not expressly designed to coerce compliance with the earlier injunction, “taking into consideration the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of a particular sanction in achieving the result desired.” Id. at 824. Shortly after the entry of the domestic violence injunction, Mr. Sauriol sent a single benign email that technically violated the injunction because it contained references that went beyond the business matters that the parties agreed orally were proper topics for communication. Nothing in this record supports the proposition that Mr. Sauriol must receive a significant jail term, a sizable fine, or training about spousal battery in order to stop sending unauthorized emails comparable to the one at issue here. We do not rule out that the trial court would have been authorized to order Mr. Sauriol to pay a small fine for this violation and to issue a warning that additional fines would be imposed for any future violation. But that is not the nature or the purpose of this unusual jail term, which is coupled with an equally unusual purge provision.
Reversed and remanded.
VILLANTI and WALLACE, JJ„ Concur.